EPREMIAM et al. v. WARD, Collector of Internal Revenue.

(Circuit Court, N. D. New York. May 7, 1909.)

1. INTERNAL REVENUE (§ 15*)—CIGARETTE TAXES—ASSESSMENT—"WHOLESALE VALUE OR PRICE."

Rev. St. § 3394, as amended by Act Cong. July 24, 1897, c. 11, § 10, 30 Stat. 206 (U. S. Comp. St. 1901, p. 2221), classifies cigars and cigarettes for internal revenue duty, and imposes a stamp tax of 54 cents per thousand on cigarettes weighing not more than three pounds to the thousand, and the wholesale value or price of which is not more than $2 per thousand, including the tax, and, if the value exceeds such sum, then they are required to carry a tax of $1.08 per thousand. *Held* that, where intestate manufactured cigarettes and sold them at wholesale at his storeroom to any one who might apply in reasonable wholesale quantities at $2 per thousand, the fact that the larger part of the cigarettes manufactured by him were purchased by his son at $2 per thousand and sold by him at wholesale with cigarettes of other manufacture for more than such price did not make the "wholesale price or value" of intestate's cigarettes more than $2 per thousand, and hence he was not subject to an assessment prescribed by section 3371, as amended by Act March 1, 1879, c. 125, § 14, 20 Stat. 346 (U. S. Comp. St. 1901, p. 2205), for insufficient stamping.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 15.*]

2. EVIDENCE (§ 590*)—WEIGHT AND SUFFICIENCY—INTERESTED WITNESSES.

The court is bound to give credit to uncontradicted testimony of interested witnesses when it is substantiated and is not inconsistent with well-known facts, experience, and reason.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2439; Dec. Dig. § 590.*]

At Law. This is an action to recover the sum of $245.39, with interest thereon from September 6, 1907, making a total at the date of April 6, 1909, of $268.70, claimed to have been wrongfully collected by the defendant as taxes on cigarettes from one Hagop Epre-

miam, now deceased, by means of an assessment levied and made because of alleged insufficient stamping.

Walter E. Ward, for plaintiffs.
George B. Curtiss, for defendant.

RAY, District Judge. Hagop Epremiam, from August, 1906, to July, 1907, inclusive, was a cigarette manufacturer carrying on his business in the city and county of Schenectady, N. Y. He had a small shop, and was assisted by his daughter. He had a son, Krikor Epremiam, who traveled on the road and sold cigarettes to various customers at wholesale. The factory of Hagop Epremiam was a small affair, as was the business of his son. The son during said time purchased cigarettes from a number of different houses, of different qualities, and also purchased the larger part of the product of his father's factory. The son had his storehouse in the same building and on the same floor with his father's factory. They were separated by board partition only. Hagop Epremiam came from Turkey, where he had been engaged in the same business.. He was upwards of 60 years of age. But there is no evidence that he was incompetent to do business or to carry on business. In connection with manufacturing cigarettes, the father maintained and carried on a sort of wholesale house selling at his factory in reasonable quantities to all comers. It was generally known in Schenectady that he not only manufactured cigarettes but sold at wholesale, and he had a considerable number of customers at that place. The demand for his cigarettes was not large in that city, but there is no evidence that he did not do a wholesale business in the regular way. There is no evidence that there was any contract, agreement, or understanding between the father, Hagop, and the son, Krikor, that the son would take either the whole output of the father's factory or the major part thereof. It is conceded that the cigarettes in question did not weigh more than three pounds per thousand, but it is claimed that the wholesale value or price of same was more than $2 per thousand, and that therefore the lawful tax thereon was $1.08 per thousand. They were stamped with internal revenue stamps by Hagop, and put upon the market to all customers stamped at 54 cents per thousand. · If the wholesale value or price of these cigarettes was not more than $2 per thousand, then the full tax was paid by Hagop Epremiam. If the wholesale value or price was more than $2 per thousand, then the lawful tax that should have been paid was $1.08 per thousand. The proof shows that Hagop sold these cigarettes to all comers at $2 per thousand, and that they weighed not more than three pounds per thousand. He sold the main portion of his product to the son, Krikor, at $2 per thousand; but Krikor, traveling upon the road, sold in the main, if not entirely, at wholesale to dealers at places distant from Schenectady at from $2.50 to $3 per thousand. Discovering these facts, the collector of internal revenue, without giving the notice required by the proviso of section 3371 of the Revised Statutes, as amended by section 14 of the act of March 1, 1879, c. 125, 20 Stat. 346 (U. S. Comp. St. 1901, p. 2205), made an assessment for the additional tax claimed of

54 cents per thousand, and this, under protest, was finally paid after an appeal to the commissioner of internal revenue at Washington, who decided that the assessment was lawful and must be paid.

This action was brought to collect back the amount of the assessment aforesaid so made. This action was commenced by Hagop Epremiam, but, he having died, his administrators were substituted as plaintiffs. On the trial the plaintiffs called several witnesses, who testified that during the time mentioned they purchased cigarettes of the kind and character in question of Hagop Epremiam at wholesale at $2 per thousand. There was no evidence that he ever declined to sell to or supply any would-be purchaser. There was no evidence, except by inference, that Hagop ever entered into any oral or written agreement or contract for the sale of his cigarettes to any one or more persons or firms exclusively, or that he was unwilling or not ready at all times to sell cigarettes to jobbers or the trade generally in reasonable quantities for the price named—$2 per thousand. There was no evidence that this manufacturer sold his cigarettes to one or more persons exclusively, or that any one or more persons took the entire product and then sold or distributed the goods or cigarettes to the trade at a wholesale price fixed by them in excess of $2 per thousand. By section 3394 of the Revised Statutes as amended by section 10 of the act of July 24, 1897, c. 11, 30 Stat. 206 (U. S. Comp. St. 1901, p. 2221), cigars and cigarettes are defined and classified. Section 3371 provides for an assessment for deficiency in stamping. This section, containing the proviso "that no such assessment shall be made until and after notice to the manufacturer of the alleged sale and removal to show cause against said assessment; and the commissioner of internal revenue shall, upon a full hearing of all the evidence, determine what assessment, if any, shall be made," does not specifically name or mention cigarettes. However, the regulations established by the commissioner of internal revenue and signed by John C. Capers, commissioner, and approved by the Secretary of the Treasury, treat this section as applicable to cigarettes. The government contends that the proviso quoted has no application to cigarettes, and calls attention to section 47 of chapter 349 of the act of August 27, 1894, 28 Stat. 562 (U. S. Comp. St. 1901, p. 2275), reading as follows:

"That whenever any article upon which a tax is required to be paid by means of a stamp, is sold or removed for sale by the manufacturer thereof, without the use of the proper stamp, in addition to the penalties imposed by law for such sale or removal, it shall be the duty of the commissioner of internal revenue, within a period of not more than two years after such removal or sale, upon such information as he can obtain, to estimate the amount of the tax which has been omitted to be paid, and to make an assessment thereon upon the manufacturer or producer of such article. He shall certify such assessment to the collector who shall immediately demand payment of such tax and upon the neglect or refusal of such payment by such manufacturer or producer shall proceed to collect the same in the manner provided for the collection of other assessed taxes."

I do not think it necessary to decide whether or not the proviso quoted applies to cigarettes. I think the decision of this case depends upon how we are to determine the "wholesale value or price" of the cigarettes in question. If the wholesale value or price was more than $2

per thousand, then the assessment was legally made and collected. If the wholesale value or price was only $2 per thousand, then the assessment was illegally made and collected.

Hagop Epremiam ran the so-called factory. The numbers of cigarettes manufactured were small compared with some establishments, but still it was a factory, and we are to get at the wholesale value or price in the same manner we would in the case of a large or an extensive factory. Hagop Epremiam did not sell at retail. There is no pretense by the government that he sold his entire output to his son, Krikor Epremiam. It is substantially conceded that he did sell the greater part of his output to that son at $2 per thousand, and who in turn traveled about the country and sold them to dealers and jobbers at from $2.50 to $3 per thousand. He also sold other tobacco and cigarettes. Selling in this way, he would be expected to make a profit. He could not afford to go on the road and sell as he did unless he could dispose of the cigarettes for more than he paid for them. There is no evidence of any collusion between Hagop and Krikor, the son. Hagop ran the business of manufacturing, aided by his daughter, Mary, and the fact that he was old and failing does not militate against him. Krikor was in the same building, but it is well known that foreigners coming to this country frequently live in close and cramped quarters, sometimes several families in a house that would suffice for one American family only. Hagop had the right to sell to Krikor. But he did not sell or contract to sell all his output to the son, and there is no evidence that he did. There is no evidence that Hagop contracted to supply him any definite amount or to restrict his sales to others. He had an open factory, and sold all he could to all comers. Krikor took what he wanted at the same price Hagop fixed as his wholesale factory price, and at the same price Hagop sold to his customers, of whom he had several. It seems to me that the evidence establishes that Hagop ran a wholesale store in connection with his factory, advertising openly and selling openly to all comers, and that the sales to his son, Krikor, were made in good faith as a part of his wholesale business, and that he thereby established a wholesale value or price for these cigarettes at Schenectady, N. Y. I do not think that for the purpose of taxation under the internal revenue law we can follow the goods from one wholesaler to another and fix the wholesale value or price for taxation as that demanded or paid by the one remote from the factory, in case it is greater than the wholesale price at the place of manufacture. It is perfectly apparent that Hagop might not have sold any to the son had his local custom exhausted his entire output. Krikor was a traveling wholesaler of these cigarettes and others, and sold them in the main at points distant from the factory. If he had sold in Chicago and Minneapolis and St. Louis to wholesalers, who in turn had sold at wholesale at an increased price to small retailers about the country, which wholesale value or price would govern for the purpose of fixing the stamp tax? I do not think the case is within Treasury Decision 871, March 1, 1905, or Treasury Decision 896, May 24, 1905, vol. 8, January-December, 1905.

In "Regulations Established Concerning Tax on Tobacco, Snuff, Cigars and Cigarettes, August 1, 1907, by John C. Capers, Commis-

sioner of Internal Revenue, Approved by Geo. B. Cortelyou, Secretary of the Treasury," it is said:

"The wholesale value or price of cigarettes weighing not more than three pounds per thousand will apply to cigarettes that have been properly packed and stamped, and will include the tax; and, if the wholesale value or price, with tax included, does not exceed $2 per thousand, such cigarettes may be tax-paid at the rate of 54 cents per thousand.

"Before selling stamps for the payment of the tax on cigarettes at the rate of 54 cents per thousand collectors will require the manufacturer to file an affidavit setting forth the trade-mark name or brand of the cigarettes, and that the same will not be sold for a greater price than $2 per thousand, tax included.

"The affiant should also be required to state that he has not entered into, and will not enter into, any oral or written agreement or contract for the sale of such cigarettes to any one or more persons or firms exclusively, but that he is willing and ready to sell the same to jobbers or the trade generally, in reasonable quantities, for not exceeding the price named.

"Collectors shall also investigate in each instance in order to ascertain whether the manufacturer does sell his cigarettes to one or more persons exclusively who may own the trade-mark brand, and take the entire product of that brand and then sell or distribute the goods to the trade at a wholesale price fixed by them exceeding $2 per thousand. In such a case the jobber or person purchasing the cigarettes and distributing them to the trade would fix the wholesale price, and not the manufacturer, and the cigarettes would be properly subject to the higher rate of tax of $1.08 per thousand."

It seems to me clear that when a manufacturer has established a wholesale store at his factory, where he actually sells to all comers at wholesale only and at a uniform price, and does not enter into any oral or written agreement or contract or understanding with any one for the sale of his cigarettes to any one or more persons or firms exclusively, but is ready and willing to sell the same to jobbers and to the trade generally in reasonable quantities for not exceeding the price of $2 per thousand (of the proper weight), and does so sell, he is a wholesaler, and has fixed the wholesale value or price of his product. In such case he is within and protected by the rules and regulations quoted. This is true even if some person takes the greater part of his product, purchasing the same in due course of business, and in turn disposes of same at wholesale to others at distant points at a profit. It was quite natural for Krikor to purchase of his father. So long as he was not a manufacturer himself, he had to purchase of some one if he traveled on the road and sold to the trade generally. I see no impropriety in all this. I must take the evidence as it was given on the trial of the case. I saw nothing inconsistent in the stories or suspicious in the manner of the daughter or son, or anything that indicated other than a legitimate business. The evidence was of such a character that the burden was thrown on the United States to show that the business of Hagop Epremiam was not a legitimate wholesale business, or that he had some sort of contract or agreement with Krikor that he was to take all or substantially all his output. We may suspect that there was some sort of an agreement between father and son, and that a legitimate and proper wholesale price at Schenectady was more than $2 per thousand for these cigarettes, but there was no proof whatever that such was the fact. The statute fixes the tax on all cigarettes weighing not more than three pounds per thousand, and of a whole-

sale value or price of not more than $2 per thousand, at 54 cents per thousand. It was conceded that these cigarettes did not weigh more than three pounds per thousand, and that the tax of 54 cents per thousand was duly paid before this assessment was made. I think, on the evidence, the plaintiff's intestate had fully complied with the law. The assessment, as shown by the papers, was based on the assumption that, inasmuch as the greater part of the entire manufacture of the father was taken by the son at $2 per thousand and sold at other points at wholesale for a greater price, and they occupied the same building, their warerooms being separated by a board partition only, there must have been some secret understanding or agreement. This falls short of proving an agreement. It was also shown that the son purchased considerable stock for the father. It was not unnatural that the son purchased stock for the father. The son says that he used the father's money and that there was no partnership between them, and that the father owned and carried on the manufacturing business and sold at wholesale to all comers. There is no proof, only suspicion, to the contrary.

The court is bound to give credence to uncontradicted testimony even from interested persons when it is substantiated as it was here, and is not inconsistent with well-known facts, experience, and reason.

I assume that the assessment was made in good faith, and that the burden was on the plaintiff here to show by a fair preponderance of credible evidence that such assessment was illegally made; that the full tax imposed by law had been paid by affixing the stamps, 54 cents for each thousand, before the cigarettes were put upon the market; that the wholesale value or price of such cigarettes had been fixed at not more than $2 per thousand at Schenectady by general sales at wholesale at that place to all comers, and that there was no agreement, contract, or understanding that any one or more persons would take the whole output of the factory at a fixed price. This was done in this case.

Holding these views of this case, there will be a judgment for the plaintiffs for the amount claimed, with costs.