CHARLES J. O'LAUGHLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. J. O'LAUGHLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55739, 55740.  Promulgated July 31, 1934.

*Raymond H. Schultz, Esq.*, for the petitioners.
*Nathan Gammon, Esq.*, and *Vernon F. Weekley, Esq.*, for the respondent.

1330

1332

OPINION.

BLACK: The problem presented in these proceedings is whether the respondent erred in including in gross income and disallowing as deductions therefrom the six amounts set out in our findings, totaling $91,043.86. The position of the petitioners is that they derived no gain or income from the receipt of the several amounts in question, for the reason that, as petitioners contend, such amounts were the property of the particular corporation which advanced them, and were received by each petitioner merely as the agent for such corporation. On that ground petitioners contend they should never have reported the amounts in question as income or claimed them as deductions in their 1927 and 1928 income tax returns, and that whether such amounts constituted deductible expenditures of the corporation is not before the Board. The position of the respondent is that petitioners have failed to overcome the prima facie correctness of his determination that the amounts in question were income to petitioners and not deductible as claimed by them on their returns.

In view of the facts recited in considerable detail in our findings of fact, we must conclude that respondent was justified in including in petitioners' gross incomes amounts which they received during the taxable years from corporations by which they were employed and which were charged on the books of the corporations as commissions paid to petitioners. We do not think petitioners have offered sufficient evidence to justify us in taking these amounts out of gross income. The burden rests upon the petitioners to prove either that these amounts were not income to them or that they were entitled to take them as deductions from their gross incomes. This is true regardless of the fact that the Commissioner may have proceeded upon a wrong theory in arriving at his determination (*Edgar M. Carnrick*, 21 B.T.A. 12, 24; *Altschul Tobacco Co.* v. *Commissioner* (C.C.A., 5th Cir.), 42 Fed. (2d) 609, 610; *Reinecke* v. *Spalding*, 280 U.S. 227), or that he used incorrect methods of computation or incorrect methods or hypotheses in arriving at his determination, *Bishoff* v. *Commissioner* (C.C.A., 3d Cir.), 27 Fed. (2d) 91; *Helen Pitts Parker*, 14 B.T.A. 1185, 1197; *Jacob F. Brown*, 18 B.T.A. 859, 867; *Uncasville Mfg. Co.*, 19 B.T.A. 920, 927; *Atlantic Casket Co.* v. *Rose* (C.C.A., 5th Cir.), 22 Fed. (2d) 800; *Anderson* v. *Farmers Loan & Trust Co.* (C.C.A., 2d Cir.), 241 Fed. 322; *Benedict Crowell* v. *Commissioner* (C.C.A., 6th Cir.), 62 Fed. (2d) 51.

The testimony of petitioner Charles J. O'Laughlin is to the effect that the resolutions set out in our findings were passed by the several boards of directors on the dates indicated; that the amounts of $19,438.76 and $48,165.41 were furnished him by the Central Lime & Cement Co. " to promote new business and to maintain good will ";

that he paid out all of those sums for that purpose; that he did not retain any of this money for himself; that some of the money was spent for or donated to Christmas basket funds, labor unions, prize fights, football games, banquets, and political organizations for campaign purposes; that he kept no record or list of any expenditure; that he did not know to whom he made any of the payments, or the amounts or dates thereof; that "it was all spent for the benefit of the Central Lime and Cement Company"; that he made such expenditures merely as the agent for the Central Lime & Cement Co.; and that he "never paid anything over $1,500 or more in any one year to any one man." The testimony of petitioner John J. O'Laughlin was substantially the same as that of petitioner Charles J. O'Laughlin, except that it dealt with the amounts received by him from the other two corporations. We quote a part of the testimony of John J. O'Laughlin, as follows:

Q. Tell the Court as much as you can remember of the various classes and types of payments made by you and the method of making those payments.

A. The sales of this company were made within a radius of 150 miles from Chicago. The major portion of them was in the northern tier of counties of Indiana known as the Calumet industrial district. For the most part, expenses in connection with promotion of those sales were confined to politics, political contributions, entertainment of customers, directly and indirectly, and service in the way of expediting shipments. In this area there is a great number of political subdivisions, cities, towns, villages, counties and townships, and the officials are changed very rapidly, every two years in most cases. A considerable portion of this promotion money went for the election of those officials. Entertainments, such as road conventions, contractors' conventions, and entertaining at various world series baseball games and football games and prize fights, and occasionally theatres and dinners. A small part was probably paid for services, but as I have mentioned—service in the way of special movement of cars and trains. I believe that covers about as much in a general way as I can recall.

\* \* \* \* \* \* \*

Q. Are you able to state what portion of those amounts was paid for political campaign contributions and what proportion for Christmas presents, to expedite shipments, baseball tickets, or any other purpose?

A. No, I cannot. I would say that the political contributions was the greater amount. Further than that I could not say.

Q. You would not attempt to segregate those from the amounts paid for entertainment or expediting shipments?

A. No. I could not establish the ratio there.

Q. Were any of those amounts paid for commissions?

A. No, I think not.

On this showing petitioners ask us to hold in their favor. Of course if petitioners had made a proper showing that, after receiving certain commissions due others, they in turn paid them out to other individuals as commissions for sales which such other individuals had actually made for the companies, there would have been no

justification for including the amounts in petitioners' income. Under such circumstances they would have been merely the conduit through which such payments passed. *Dubiske* v. *Commissioner*, 58 Fed. (2d) 51; *Herbert Choynski*, 14 B.T.A. 9. But they made no satisfactory showing of that kind. It is clear that the money was not disbursed by them as commissions to others.

Petitioners at the hearing and in their briefs laid a great deal of stress on the fact that the reason they made out their income tax returns the way they did, reporting the amounts received as commissions paid to them and taking equal amounts of deductions for commissions paid out by them, was because they were instructed by a representative of the collector of internal revenue to do it that way. No representative of the collector of internal revenue was present at the hearing and testified that he gave any such instructions, but, assuming that he did so, it seems clear that it was upon a representation made to him that these amounts were paid to petitioners as commissions, to be paid in turn by them to other individuals as commissions for sales made by them for the companies.

All the documentary evidence in these proceedings seems to make it clear that the corporations represented all along to the Government that these amounts were paid to petitioners as commissions and disbursed by them to others as commissions for sales made in behalf of the companies. In the first place the corporations charged the amounts on their books as commissions. The petitioners returned the amounts on their income tax returns as commissions received and then took deductions of equivalent amounts for commissions paid out to other individuals for sales made for the companies.

In a letter to the collector of internal revenue at Chicago, Illinois, shown in our findings of fact, one of the corporations, the Central Lime & Cement Co., represented that petitioner Charles J. O'Laughlin had used the money paid to him to pay " to other individuals in amounts ranging from $10 to $500 for commissions on sales." Was that true? Evidently not, for Charles J. O'Laughlin testified at the hearing that the greater part of the amounts paid out by him was for very different purposes than commissions on sales.

When the Central Lime & Cement Co., of which petitioner Charles J. O'Laughlin was the secretary, wrote to the collector of internal revenue at Chicago, Illinois, as shown above, concerning these payments, it did not inform the collector that the money was disbursed by O'Laughlin for Christmas basket funds, labor unions, prize fights, foot ball games, political organizations, campaign expenses, and the like, as testified to at the hearing. What the letter did say was that the amounts were disbursed by O'Laughlin " for commissions on sales."

If it was not the desire to conceal something from the Government, why was not a frank disclosure made?

Petitioner John J. O'Laughlin testified at the hearing, as we have already pointed out, that so far as he recalled none of the amounts paid him by the companies were paid out by him as commissions on sales.

In view of this testimony it is our conclusion that the evidence is not sufficient to overcome the prima facie correctness of the Commissioner's determination.

Reviewed by the Board.

*Decision will be entered for the respondent.*

MORRIS, ARUNDELL, and VAN FOSSAN dissent.

---

McMAHON, dissenting: The decision in these proceedings should be for the petitioners.

I quote from the opinion of the majority as follows:

The testimony of petitioner Charles J. O'Laughlin is to the effect that the resolutions set out in our findings were passed by the several boards of directors on the dates indicated; that the amounts of $19,438.76 and $48,165.41 were furnished him by the Central Lime & Cement Co. " to promote new business and to maintain good will "; that he paid out all of those sums for that purpose; that he did not retain any of this money for himself; that some of the money was spent for or donated to Christmas basket funds, labor unions, prize fights, football games, banquets and political organizations for campaign purposes; that he kept no record or list of any expenditures; that he did not know to whom he made any of the payments, or the amounts or dates thereof; that " it was all spent for the benefit of the Central Lime and Cement Company "; that he made such expenditures merely as the agent for the Central Lime & Cement Co., and that he " never paid anything over $1,500 or more in any one year to any one man." The testimony of petitioner John J. O'Laughlin was substantially the same as that of petitioner Charles J. O'Laughlin, except that it dealt with the amounts received by him from the other two corporations. We quote a part of the testimony of John J. O'Laughlin, as follows:

Q. Tell the Court as much as you can remember of the various classes and types of payments made by you and the method of making these payments.

A. The sales of this company were made within a radius of 150 miles from Chicago. The major portion of them was in the northern tier of counties of Indiana known as the Calumet industrial district. For the most part, expenses in connection with promotion of those sales were confined to politics, political contributions, entertainment of customers, directly and indirectly, and service in the way of expediting shipments. In this area there is a great number of political subdivisions, cities, towns, villages, counties and townships, and the officials are changed very rapidly, every two years in most cases. A considerable portion of this promotion money went for the election of those officials. Entertainments, such as road conventions, contractors' conventions, and entertaining at various world

series baseball games and football games and prize fights, and occasionally theatres and dinners. A small part was probably paid for services, but as I have mentioned—service in the way of special movement of cars and trains. I believe that covers about as much in a general way as I can recall.

\* \* \* \* \* \* \*

Q. Are you able to state what portion of those amounts was paid for political campaign contributions and what proportion for Christmas presents, to expedite shipments, baseball tickets, or any other purpose?

A. No, I cannot. I would say that the political contributions was the greater amount. Further than that I could not say.

Q. You would not attempt to segregate those from the amounts paid for entertainment or expediting shipments?

A. No. I could not establish the ratio there.

Q. Were any of those amounts paid for commissions?

A. No, I think not.

On this showing petitioners ask us to hold in their favor. Of course if petitioners had made a proper showing that, after receiving certain commissions due others, they in turn paid them out to other individuals as commissions for sales which such other individuals had actually made for the companies, there would have been no justification for including the amounts in petitioners' income. Under such circumstances they would have been merely the conduit through which such payments passed. *Dubiske* v. *Commissioner*, 58 Fed. (2d) 51; *Herbert Choynski*, 14 B.T.A. 9. \* \* \*

Thus, the majority opinion rejects undisputed testimony of two unimpeached witnesses, which clearly establishes that the petitioners were " *merely the conduit through which such payments passed.*"

The test here set forth by the majority opinion is whether the petitioners received from and paid out for the corporation " commissions " due others for sales already made by others. This test is too restricted. The true test is whether the amounts in question constitute income of the petitioners. In *Ford* v. *Commissioner*, 51 Fed. (2d) 206, the court laid down a test as follows:

\* \* \* The true normal criterion to be applied in this class of case is *the actual receipt and retention during the year in question of what was then considered to be income*, not whether the taxpayer exposed himself to possible personal liability. [Emphasis supplied.]

In the instant proceedings, under the undisputed, unimpeached, unequivocal proof, *none of the amounts in question or any part thereof was retained by petitioners during the years in question or at any time and none of it* " was then considered to be income." There is no evidence in the record in these proceedings to sustain a finding or a conclusion to the contrary.

The majority opinion, in the last analysis, commits error in grounding with undue stress its holding upon the use that was made of the term " commissions ", and more emphatically upon the use that was made of that term in the book entries of the corporations, which are entities separate, apart, and distinct from the petitioners.

The majority opinion, under all the facts and circumstances, would be in error even if it had been shown that the term "commissions" had been used by the petitioners in personal book entries of their own, rather than in the book entries of the corporation shown by the proof.

In *Doyle* v. *Mitchell Bros. Co.*, 247 U.S. 179, the United States Supreme Court said:

* * * nor is the result altered by the mere fact that the increment of value had not been entered upon plaintiff's *books of account. Such books are no more than evidential, being neither indispensable nor conducive. The decision must rest upon the actual facts, which in the present case are not in dispute.* [Emphasis supplied.]

In *James William Everhart*, 26 B.T.A. 318, we said:

The petitioner purchased an interest or participation and set up the investment on his own records as a personal investment of $20,000 in behalf of his father, his brother and himself. *He testified that he did not raise any question about the propriety of the amount of $10,000 being treated as a commission on the memorandum sent to him by the company because he presumed he was only being charged for the amount he had paid for the interest.*

We have no information as to whether or not the memorandum sent to the petitioner by the company, as well as the information certificate Form 1099, reflected the company's book entries. However, even if so, *book entries are not conclusive and income is to be determined from actual facts. B. B. Jones,* 18 B.T.A. 1225, and cases cited therein.

In *Luther Elkins*, 12 B.T.A. 1058, the petitioner, a member of a joint adventure in the development of certain oil wells, purchased 100 units, each unit representing an undivided 1/5000 interest in land. These units had been sold for $100 per unit to others, but the cost of selling was equal to 50 per cent of the selling price. *The petitioner tendered his check for $5,000 in payment of the 100 units, but the bookkeeper advised him that it would be better to have the books show a purchase at $100 per unit and that the petitioner should offer his check for $10,000 and the bookkeeper would immediately return $5,000. This was done and reflected on the books as commissions paid. The Board in that case held that such bookkeeping transaction did not give rise to income or change the true facts of the case.* [Emphasis supplied.]

Thus, *the entry in books of account of items as "Commissions" when they are, in fact, not "commissions",* like other shortcomings or errors in book entries, *are not* indispensable or *conclusive; and book entries are open to explanation and must yield to the facts as to what actually happened as appears from the undisputed, unimpeached evidence such as we have here,* and this is especially true where the books in question are, as here, not the books of the persons producing the evidence in explanation of the book entries. It follows that what is here said in this respect applies with even greater force to other records such as corporate minutes or resolutions.

What then are the undisputed, actual facts of these proceedings in reference to the use of the word "*commissions*" in the books of

the corporations, corporate minutes or otherwise, in so far as they bear on this question before us as to whether the amounts in question are income of the petitioners? As appears from the resumé of testimony of the petitioners and from the testimony of John J. O'Laughlin herein quoted from the majority opinion, and from other parts of the majority report, a small portion of the amounts in question was "*commissions*" in the most restricted sense and all of them were received from the corporations by the petitioners and by them paid out to others for and in behalf of the corporations to promote the sales of the corporation by creating good will and otherwise as detailed in the evidence.

In Black's Law Dictionary (2d ed.), at p. 5, the term "commissions" is defined as follows:

COMMISSIONS. The compensation or *reward* paid to a *factor,* broker, agent, bailee, executor, trustee, receiver, *etc., when the same is calculated as a percentage on the amount received or expended.* [Emphasis supplied.]

All the amounts in question were by the resolution of the corporation authorizing the expenditures limited to a specified "percentage" or proportion of the volumes of sales and when an amount was thus paid out it was used as or for something in the nature of a "*reward*" to others for past, present, or prospective performance. It is apparent that the term "commissions" was used for lack of a better term and no harm was done to anyone. Everyone concerned understood the use that was being made of it. No one was misled. It is elementary that taxation is eminently practical; and hence practical considerations must control in dealing with it. Notwithstanding the use made of the term "commissions" in the book entries and otherwise, we now know just what was actually done with the amounts in question and that they were not income to the petitioners. In any event, the use which was made of the term "commissions" as appears from all of the proof in these proceedings *cannot create income to the petitioners.*

It must be borne in mind that the amounts in question in these proceedings consist of money or its equivalent. In reality we are concerned with money. Whether it be labeled "commissions" or something else is not controling. *Money was in fact received and paid out by petitioners.* This is demonstrated by the proof when we look beyond the mere term "commissions" which was used. None of this money was retained by petitioners or "was then considered to be income." It was all paid out by them for and in behalf of the corporations. Hence, they were "merely the conduit through which such payments passed." All of the "showing" made in these proceedings is of that kind; and the respondent has made no showing whatever to the contrary.

The petitioner J. J. O'Laughlin, testified in part as follows:

Q. I would like to ask two more questions. You testified that you paid out in 1927 $16,577.43 received from the A. C. O'Laughlin Company and $2,117.13 received from the Limestone Products Company, and that you paid out $2,161.30 received from the A. C. O'Laughlin Company during the year 1928 and $2,483.75 received from the Limestone Products Company during 1928; were all of those amounts paid out by you for and on behalf of the respective companies?

A. Yes.

Q. Were any of those amounts paid out by you for your own personal benefit?

A. No.

Mr. SCHULTZ. That is all.

The MEMBER. Were any of them retained by you for your personal benefit?

The WITNESS. No.

The petitioner, Charles J. O'Laughlin, testified in part as follows:

Q. You testified, did you not, that you received from the Central Lime & Cement Company in 1927 $19,438.76 and from the same company in 1928 $48,165.41?

A. That is right.

Q. Were all of those amounts paid out by you for and on behalf of the company?

A. Yes, sir.

Q. Were any of those amounts paid out by you for your own benefit?

A. No, sir.

Q. Did you retain any of those amounts?

A. No, sir.

This and other testimony of the petitioners, including that stated or quoted in the majority opinion, is corroborated as follows. In the report of the internal revenue agent in charge, dated September 29, 1930, *approved by respondent* and attached to and made a part of his notice of deficiency dated February 7, 1931, addressed to and received by the petitioner, J. J. O'Laughlin, which is the basis of the petition in Docket No. 55740, there is contained a statement with reference to the year 1927 in part as follows:

(a) Deductions for commissions as shown on line 16 of return has been disallowed in full amount of $18,694.56.

*This amount represents various amounts paid at various dates to various persons, and in currency,* * * *

$16,577.42 of this amount was received by the taxpayer from A. C. O'Laughlin Co. and $2,117.13 from Limestone Products Co. *to be disbursed for them by the taxpayer.* [Emphasis supplied.]

Statements of similar character and import, covering in the aggregate all of the other amounts in question in these proceedings, and all of the years before us, were thus approved by the respondent and incorporated in his notices of deficiency issued to the petitioners.

The letter dated December 3, 1928, from the Central Lime & Cement Co. to the collector of internal revenue at Chicago, in refer-

ence to the amount of $19,438.76 paid by it to Chas. J. O'Laughlin in 1927, states in part as follows:

This amount was in addition to his salary and *was of no benefit to him as it was disbursed by him to other individuals in amounts ranging from $10.00 to $500.00,* * * * [Emphasis supplied.]

The income tax returns of the petitioners contain statements, covering in the aggregate all of the amounts in question, in part as follows: " * * * *this amount was paid to me and was disbursed by me for them* [the corporation] * * *." [Emphasis supplied.]

The resolution adopted by the board of directors of the Central Lime & Cement Co. on February 3, 1927, authorizing the expenditure of some of the amounts in question, is in part as follows:

RESOLVED that an amount equivalent to one-fourth of one per cent of the total sales for the year 1927 be appropriated to be used in payment of Commissions on various sales made by individuals *other than the Company's regular salesmen.*

RESOLVED FURTHER that the Treasurer be authorized to have checks drawn from time to time during the year to M. J. O'Laughlin and Chas. J. O'Laughlin *who will in turn make payments to the proper parties in connection with each sale.* [Emphasis supplied.]

Resolutions similar in character and import were adopted by the directors and stockholders of both corporations, covering in the aggregate all the other amounts in question.

In passing it may be added that the notices of deficiency issued to the petitioners by the respondent, together with the statements of the revenue agent, which were *approved by respondent* and attached to and made a part of such notices, were properly received in evidence as admissions by the respondent against interest. *Davison* v. *Commissioner*, 60 Fed. (2d) 50.

All of the written evidence, set forth here, not only corroborates the testimony of the petitioners to the effect that the amounts in question were not income to them, but it is wholly inconsistent with the theory that they constituted income; and all of the evidence in the record is reconcilable with the view that these amounts were not income to the petitioners. All of the evidence is not open to any other inference and does not sustain any other conclusion of fact or law. The use of the term " commissions " in the book entries and otherwise has been adequately explained in the evidence as a whole. The undisputed, unequivocal, positive testimony of petitioners and the evidence in the record corroborating it should not be rejected or disregarded; and it requires findings and conclusions, which have not been made by the majority, to the effect that the amounts in question were not income taxable to the petitioners for the years before us.

The proceedings of this Board are conducted in accordance with the rules of evidence applicable in courts of equity of the District of

1342

Columbia. Sec. 907 (a), Revenue Act of 1924, as amended by sec. 601, Revenue Act of 1928.

In *Brown* v. *Peterson*, 25 App. D.C. 359, the Court of Appeals for the District of Columbia stated:

* * * The law is that positive testimony uncontradicted and not inherently improbable, is prima facie evidence of the fact which it seeks to establish, and the jury is not at liberty to disregard it. *Crane* v. *Morris*, 6 Pet. 598, 8 L. Ed. 514; *Kelly* v. *Jackson*, 6 Pet. 622, L. Ed. 523; *Quock Ting* v. *United States*, 140 U.S. 417, 35 L. Ed. 501, 11 Sup. Ct. Rep. 733, 851; *The City of New York* (*Alexandre* v. *Machan*) 147 U.S. 72, 31 L. Ed. 84, 13 Sup. Ct. Rep. 211.

To the same effect is *Walker* v. *Warner*, 31 App. D.C. 76.

In *Epremiam* v. *Ward*, 169 Fed. 691, it was stated:

The court is bound to give credence to uncontradicted testimony even from interested persons when it is substantiated as it was here, and is not inconsistent with well-known facts, experience, and reason.

In *Blackmer* v. *Commissioner*, 70 Fed. (2d) 255 (C.C.A., 2d Cir.), the court said:

* * * *When the evidence before the Board, as the trier of the facts, ought to be convincing, it may not say that it is not. Sioux City Stockyard Co.* v. *Commr.*, 59 Fed. 2, 944 (C.C.A. 8); *Conrad & Co.* v. *Commr.*, 50 Fed. 2, 576 (C.C.A. 1); *Chicago Ry. Equipment Co.* v. *Blair*, 20 Fed. 2, 10 (C.C.A. 7). *And the Board may not arbitrarily discredit the testimony of an unimpeached taxpayer so far as he testifies to facts.* [Emphasis supplied.]

To the same general effect as the foregoing cases are *Planters Operating Co.* v. *Commissioner*, 55 Fed. (2d) 583 (C.C.A., 8th Cir.) and *Citrus Soap Co. of California* v. *Lucas*, 42 Fed. (2d) 372 (C.C.A., 9th Cir.). See discussion at page 472 of the opinion in *Jewett & Co.* v. *Commissioner*, 61 Fed. (2d) 471 (C.C.A., 2d Cir.).

There is no inherent or other improbability in the statements of the witnesses and there is nothing in the record to discredit their testimony. The evidence fully and satisfactorily explains everything that occurred in so far as explanation is essential to decision here. The manner of the petitioners in testifying did not give rise to doubts of their sincerity or create the impression that they were giving a wrong coloring to the facts. At the hearing the petitioners appeared to be intelligent, earnest, candid witnesses. They produced all the proof they had. The respondent has not impeached or rebutted the testimony of the petitioners and there is no reason why it should not be accepted at face value. Furthermore, it is corroborated by evidence in writing. Hence, the evidence of these petitioners does not come within the exception to the general rule as laid down in *Quock Ting* v. *United States*, 140 U.S. 417, the exception being to the effect that there may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting

testimony, and to the further effect that his manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts.

It is well settled that money received by a person as agent or representative of another is not income to such person. *Jane B. Coates*, 3 B.T.A. 429; *Herbert Choynski*, 14 B.T.A. 9; and *Nelson B. Updike*, 22 B.T.A. 12. Likewise, amounts received by a person as reimbursement for expenditures by such person on behalf of another do not constitute income to such person. *Edgar P. Haney*, 5 B.T.A. 1039.

Upon the authorities cited in the majority opinion, the burden of proof was, as there set forth, at the outset upon the petitioners, and a duty rested upon them to overcome the presumption that the deficiencies asserted by the respondent were correct. But, as appears from the discussion herein, they met the burden of proof and thereby overcame this presumption in favor of the respondent. Then the burden of proof shifted to the respondent and the duty devolved upon him to go forward with his proof and overcome the proof offered by the petitioners. This the respondent failed to do. He called no witnesses.

This presumption in favor of the respondent is a rebuttable presumption. It is merely a rule of evidence which puts the burden upon the petitioners to go forward with their proof at the outset. It is not proof. It is merely a substitute for proof and it is open to challenge and disproof. *Heiner* v. *Donnan*, 285 U.S. 312, 329. It was challenged, rebutted, and disproved. The least that can be said in the instant proceedings is that the petitioners made out a prima facie case and that the respondent failed to overcome it.

I quote further from the statement of the revenue agent in charge, *approved by the respondent* and made part of his notice of deficiency dated February 7, 1931, in part as follows: "* * * but no data has been produced to show to whom, in what amounts or date these items of payments were made." This is substantially the same and the only reason which he gave for all of his determinations which are before us in these proceedings. This is nullified in each instance by his findings in the same statement heretofore set forth to the effect that the amounts were not income to the petitioners; and the evidence shows that respondent was correct in such findings to the effect that the amounts were not income. There is sufficient data in the evidence to demonstrate this. Lack of more data does not prove income. Furthermore, it should be borne in mind that the corporations are not before us and we are not here concerned with issues between them and the respondent as to whether they are entitled to take deductions of the amounts in question for the years

before us. Whether more data, as outlined in the above quotation, would be required for the allowance of such deductions by the corporations need not be decided in these proceedings, in which are presented only issues between the petitioners before us and the respondent. Cf. *Cohen* v. *Commissioner*, 39 Fed. (2d) 540; *Blackmer* v. *Commissioner, supra;* and *Julius Forstmann, infra* (first item). Obviously issues in other proceedings involving the right of the corporations to take such deductions, if before us, would call for a type of evidence different from that called for by the issues which are before us in these proceedings. However, in passing, it may be said that the corporations did keep records of all the amounts in question in these proceedings which were paid by them to the petitioners to be paid out by the latter for and in behalf of the corporations; and the undisputed, corroborated evidence shows that all of the amounts thus received by the petitioners from the corporation were thus paid out.

In *Ford* v. *Commissioner, supra,* the court, in laying down the true test to be applied in this class of cases, among other things said, as heretofore pointed out, that such test is " *not whether the taxpayer exposed himself to possible personal liability.*" [Italics supplied.] So, in these proceedings, we are not concerned with any issue as " to possible personal liability " on the part of the petitioners to the corporations. Neither are we here concerned with any issue as to whether the corporations, which are not before us, should be denied the right to deduct any of the amounts paid to the petitioners upon the ground that expenditures were made by them for and in behalf of the corporations in contravention of some statute prompted by public policy prohibiting some act or commission and making the same punishable by fine or imprisonment or both upon conviction. Cf. *Lawrence A. Wagner,* 30 B.T.A. 1099. If, for the purposes of this discussion, we were to assume that the petitioners were convicted of such an offense in connection with the receipt and disbursement of the moneys in question for and in behalf of the corporations, such event would not make them income to the petitioners; and, if we were to thus assume that the petitioners are personally liable for the restoration to the corporations of any or all of the moneys in question because of some technical or other irregularity, we would have further demonstration that such moneys were not income to the petitioners.

I quote further from the letter of the Central Lime & Cement Co. to the collector, dated December 3, 1928, as follows:

He [taxpayer] is not in a position to furnish a statement as to whom this money was paid as the Company did not require a report from him and therefore no accurate record was kept. The amount in question was paid to him during the year, as follows, and our books will verify these figures:

1927:

| | |
|---|---|
| March | $7,700.00 |
| April | 2,000.00 |
| June | 1,000.00 |
| Nov | 6,438.76 |
| Dec | 2,300.00 |
| | $19,438.76 |

Before the return under examination was made last March, our Auditor called at your office and interviewed one of your representatives, Mr. Calvin J. Mabry, with reference to this item of Commissions, and the Company's return as well as its Officers individual returns were prepared according to his instructions.

In passing it may be said that Charles J. O'Laughlin testified to the effect that the term " *commissions* " was adopted for use in the book entries of this corporation to conform to its resolutions. The corporate policy reflected in the resolutions is explained by this witness as follows:

Ours was a very close corporation. It was a family corporation. We did not want every employee we had working for us to know what we were doing.

Petitioners were members of the family and this explains, to some extent, the lack of more exactness, detail, and formality on their part in reporting the expenditures as made for and in behalf of the corporations.

This letter shows that the corporation is not questioning the amounts covered by the letter, of which it had a record in its books, and that it approves what was done as therein detailed, in addition to showing that the petitioner was not required to make a detailed itemized report to the corporation covering those amounts and hence did not personally keep a record from which such a report could be supplied, and that no one was misled by the petitioners or the corporations, and in addition to corroborating the testimony of the petitioners to the effect that they put all of the amounts in question in their taxable incomes and took them out as deductions because of the direction of the internal revenue agent in charge that this should be done.

Charles O'Laughlin testified in part as follows:

Q. Did you take these specific items as a deduction in your returns for 1927 and 1928?

A. I did.

Q. Explain to the Court how you happened to treat those items in that manner.

A. I went over to the Internal Revenue Department with our auditor and asked for a ruling on it, as I was told that I should report them and take the deduction. I believe his name was Marbury.

\*     \*     \*     \*     \*     \*     \*

Q. Did you discuss with him the nature of the disbursements concerning which you have testified here?

A. I did.

Q. Did he tell you you would be allowed to take those deductions without any corroborating evidence or records?

A. He told me I should put it in my income tax and take it out as a deduction.

Q. Did he tell you it would be unnecessary to have receipts or records to prove the deductions?

A. He did not say.

The petitioner, J. J. O'Laughlin, testified as follows:

Q. Did all of these sums you just testified to appear in your income tax returns for 1927 and 1928 as income to you?

A. Yes.

Q. Did those like sums appear in the respective income tax returns as deductions?

A. Yes.

Q. What caused you to treat those items in that manner?

A. Information that I had received from Charles J. O'Laughlin regarding some conversations he had with an internal revenue agent.

Apparently the Calvin J. Mabry mentioned in letter to the collector is mentioned in Charles J. O'Laughlin's testimony as *Marbury.*

In accordance with this advice of the revenue agent, the petitioners included the amounts in question in their returns as income for the respective years, but such amounts were therein claimed as deductions, with the same net result as if they had been completely excluded therefrom; in each return a full explanation was made showing that these amounts were *not* received as income and they were therein fully described as having been paid out for and in behalf of each corporation from which received.

In fairness to the revenue agent it should be stated that at the time his advice was thus given there was published authority for such advice. Compare *Julius Forstmann,* 6 B.T.A. 21 (first item), under the holding of which the petitioners would be entitled to deduct these amounts because the evidence shows they were never income to them in the first place. However, the correct view, as herein set forth, is that the amounts in question were never income to the petitioners and should not be included as such. *Julius Forstmann, supra* (second item). The net result is the same. In any event, an error of inclusion of this character should be corrected at the first opportunity.

I quote from the majority opinion further as follows: "No representative of the collector of internal revenue was present at the hearing and testified that he gave any such instructions, but, assuming that he did so, it is plain that it was upon a representation made to him that these amounts were paid to petitioners as commissions, to be paid in turn by them to other individuals as commissions for sales made by them for the companies."

The fact that the revenue agent was not produced by petitioners as a witness or present at the hearing can not operate to the disad-

vantage of the petitioners. If their testimony in this regard was not acceptable to respondent there was nothing, so far as we know, to prevent him from producing the revenue agent to rebut their testimony. It is more accurate to say that the fact that the revenue agent was not thus produced lends support to the testimony of the petitioners to the effect that he did give them such advice. Nor is there any evidence in the record to sustain the statement in the majority opinion that the revenue agent's advice was given upon a representation made to him that the amounts were paid to the petitioners as commissions, to be paid in turn by them to other individuals as commissions for sales made by them for the companies. The evidence is to the contrary and, as appears from the foregoing quoted testimony, to the effect that Charles J. O'Laughlin, before receiving these directions from the revenue agent, discussed with the revenue agent " the nature of the disbursements concerning which " he testified before the Board. The only inference which can be properly drawn from this testimony and from the whole record is that Charles J. O'Laughlin discussed " the nature of the disbursements " in question here in the same way that he " testified " " concerning " their " nature " before the Board.

Since I presided at the hearing of these proceedings, I feel impelled to thus fully set forth my views.

TRAMMELL agrees with the conclusion reached in this dissent.