Harry Fogel v. Commissioner. Harry and Grace Fogel v. Commissioner.
Fogel v. Commissioner
Docket Nos. 45515, 45516.
United States Tax Court
T.C. Memo 1957-228; 1957 Tax Ct. Memo LEXIS 20; 16 T.C.M. (CCH) 1037; T.C.M. (RIA) 57228; December 13, 1957
Thomas D. Hirschfeld, Esq., 331 York Street, Newport, Ky., for the petitioners. Albert D. Greenfield, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and additions to the tax as follows: Docket
Taxable
Additions to Tax
Number
Name
Year
Income Tax
Sec. 293(a)
Sec. 294(d)
45515
Harry Fogel
1946
$ 920.73
$ 46.04
$ 61.06
1947
2,934.41
146.72
192.56
1950
2,109.98
105.50
337.60
45516
Harry and
1948
2,846.72
142.34
174.53
Grace Fogel
1949
4,935.30
246.77
288.62
*21 The primary issue is whether petitioners realized from bookmaking and gambling amounts in excess of the amounts reported in the taxable years in question. A further issue is whether the respondent properly imposed additions to the tax under sections 293(a) and 294(d) of the 1939 Code. Petitioners concede that in the year 1950 the amount of $2,063.91 is not allowable as a loss under section 23(h) of the Code. Findings of Fact Petitioners are husband and wife residing at 1018 Burton Avenue, Cincinnati, Ohio. The returns for the periods involved were filed with the collector of internal revenue for the district of Ohio. Harry Fogel, hereinafter referred to as petitioner, was engaged in a partnership with Robert Tunick from 1945 until May 29, 1947; petitioner operated as a sole proprietor from May 29, 1949 to August 5, 1950. From August 5, 1950 until December 31, 1950, petitioner engaged in a partnership with James Frederick, and during the year 1947, petitioner, Tunick, and Bauer, engaged in a partnership known as the B.F.T. partnership. Separate records were kept for this latter partnership. The enterprises in which petitioner was engaged during the taxable periods involved *22 were the operation of horse racing handbooks which business was unlawful both in Ohio and Kentucky. A central office was maintained where racing information was received. Telephones were maintained which were manned by clerks ranging in number from 2 to 8 depending on the necessities of the business done. From 80 to 90 per cent of the business was from small wagers, ranging from 50 cents to one dollar. Arrangements were made with various handbook operators numbering from 3 to 10 who accepted wagers and telephoned them into the petitioner's enterprises. The clerk receiving the telephone call made up a tally sheet showing the number of the handbook operator, the horse, the amount of the wager, and indicating whether the bet was to win, place, show, or a parlay. At times these tally sheets, from a single handbook operator, ran as high as twenty. After the results of the races were in these sheets were tallied and a daily summary made with respect to each handbook. The handbook operator was advised of the "hits" and paid the winner from his cash. At the end of the week a summary was made from the daily summary sheets. The summary sheets were made by the clerks and checked by the *23 partners. At the end of the week, a check was made with the handbook operator, and if there was agreement, the handbook operator paid the enterprise one-half of the net receipts. If there was a loss the entire amount was reimbursed to that handbook. Out of subsequent profits of such handbook the partnership or the petitioner, as the case may be, was first reimbursed for its loss before any division of the profits with the handbook operator. Petitioner's enterprises also accepted wagers direct from customers. It laid off bets to other bookmakers. Similar daily tally sheets and weekly summary sheets were made with respect to such transactions. The entries made from the weekly summary sheets were entered in the retained record under the heading "House." After settlement with the handbook operators, certain entries were made from the weekly summary sheets into a permanent record. Thereafter, the single tally sheets and the daily and weekly summary sheets were destroyed for the stated purpose of preventing their seizure in case of a raid by the authorities. Typical of the permanent records kept with respect to receipts for a portion of the year 1947 as shown on schedule 3, in evidence, *24 are set forth in the following schedule: COLLECTIONS -, 1947 2nd one-half
Mose
Shell
June
Cory
C.B.
1.
7/5
110.00
67.20
150.75
92.00
124.00
2.
7/12
59.50
171.90
105.00
29.60
127.00
3.
7/19
47.00
-47.25
108.25
6.60
149.00
4.
7/26
74.50
284.50
106.50
35.40
55.50
5.
8/2
86.10
87.00
102.50
202.20
122.00
COLLECTIONS -, 1947 2nd one-half
Court
Sonny
Cass
F.T.
House
Lou
1.
92.00
73.00
77.75
40
154.00
23.25
2.
156.80
38.00
83.50
40
830.00
34.60
3.
-108.00
67.75
141.00
40
-340.00
-81.50
4.
-203.50
-42.50
107.00
40
954.60
-353.50
5.
203.75
81.25
-25.00
40
777.20
0
The entries in the permanent records with respect to the Fogel-Tunick and the B.F.T. partnerships are in the handwriting of Tunick. The entries in the permanent records of petitioner's sole proprietorship and the Fogel-Frederick partnership are in the handwriting of Frederick. The entries in the permanent records, in evidence, for the years 1946 and 1947 are in pencil with the alleged losses indicated by a minus sign as shown on the foregoing schedule. For the other periods involved *25 the entries are in ink, with the alleged losses indicated in red figures. Partnership returns were filed for the Fogel-Tunick partnership for the years 1946, 1947, 1948, and 1949, and for the B.F.T. partnership for the year 1947. Whether or not the Fogel-Frederick partnership filed a partnership return for 1950 is not shown. The partnership returns and the individual returns of petitioner's sole proprietorship were made from the permanent records. The respondent adjusted the income of the respective partnerships of which petitioner was a partner as follows: Distributable
Deter-
Each part-
net income
mined by
ner's share
Year
Partnership
reported
Respondent
Increases
of increase
1946
Fogel-Tunick
$19,075.31
$25,230.26
$ 6,154.95
$ 3,077.47
1947
Fogel-Tunick
14,721.67
28,651.37
13,929.70
6,964.85
1948
Fogel-Tunick
14,269.67
39,640.22
25,370.55
12,685.28
Part of
1949
Fogel-Tunick
4,597.38
17,647.88
13,050.50
6,525.25
1947
B.F.T.
8,103.00
12,172.30
4,069.30
1,356.43
5 mos.
1950
Fogel-Frederick
1,390.50
2,069.50
679.00
339.50
In the deficiency notice (Docket No. 45515) for the years 1946, 1947, *26 and 1950, the respondent made adjustments to petitioner's income as follows: Deter-
Net income
mined by
Year
reported
Respondent
Increase
1946
$8,571.72
$11,649.19
$3,077.47 [1]
1947
8,722.64
17,043.92
8,321.28 [2]
Adjusted
Deter-
Gross
mined by
Year
Income
Respondent
Increase
Reported
1950
$851.64
$11,906.59
$11,054.95 [3]
In the deficiency notice (Docket No. 45516) for the year 1948, respondent increased petitioners' net income as reported by the amount of $12,685.28 representing one-half the losses claimed by the Fogel-Tunick partnership. In 1949, respondent increased petitioners' adjusted gross income as reported by the amount of $26,819.10. Of such amoun,t $6,525.25 represents one-half the disallowed losses claimed by the *27 Fogel-Tunick partnership, and the amount of $20,293.85, representing the losses claimed by the petitioner as sole proprietor. In each deficiency notice the respondent explained that the losses were disallowed for lack of substantiation under section 23(a) of the Internal Revenue Code. Opinion LEMIRE, Judge: The contested deficiencies arise by reason of the respondent's action in increasing the income of petitioner, Harry Fogel, from wagering operations conducted by various partnerships of which petitioner was a member, and by petitioner as a sole proprietor. Except with respect to the year 1950 in which the respondent determined that petitioner had additional unreported income of $1,777.60, the increases result from the disallowance for lack of substantiation of alleged losses claimed to have been sustained from the business of booking wagers in each of the taxable years in question. The respondent's determinations place the burden upon petitioner to establish that the losses claimed were actually sustained. The question presented is one of fact and is to be resolved on the basis of the evidence adduced in the particular proceeding. H. T. Rainwater, 23 T.C. 450; *28 Raymond E. Nellis, 232 Fed. (2d) 890, affirming a memorandum decision of this Court [14 TCM 170, T.C. Memo. 1955-50], Sam Mesi, 25 T.C. 513. Section 54(a) of the Internal Revenue Code of 1939, and Regulations 111, section 29.54-1, provide that each taxpayer must keep such books and records as are sufficient to establish the amount of gross income. The rule is equally applicable to those engaged in unlawful enterprises. An individual who earns his income from wagering operations should make a greater effort to maintain all data respecting his financial transactions so as to be able to substantiate the correctness of his return. The requirement that losses and deductions claimed be substantiated is vital. O'Laughlin v. Helvering, 81 Fed. (2d) 269, affirming 30 B.T.A. 1327. This record shows that petitioner, as sole proprietor, and the partnerships of which he was a member destroyed all the underlying records. Such records as were maintained consist of alleged weekly summaries made from the destroyed primary records. The manner of operation and the method employed in recording the net results of the business are set *29 forth in our findings of fact. Petitioner's counsel describes the method of accounting as unique. After careful analysis of the records in evidence we agree. For the years 1946 and 1947, the weekly summary entries were made in pencil in a bound volume and the alleged losses indicated by a minus sign. In other years the entries were made upon loose ledger sheets. Such records were readily susceptible to manipulation. In substantiation of the alleged losses disallowed by respondent, the evidence consists of the summary records, the partnership returns for the years 1946 to 1949, inclusive, petitioner's individual returns for each of the taxable years involved, the testimony of petitioner, Harry Fogel, and the testimony of Robert Tunick and James L. Frederick, partners of petitioner in certain enterprises. Each witness testified as to the manner in which the wagering operations were conducted and the method of recording the weekly summary entries in the retained records. From its examination the Court believes that in certain instances the record contradicts the testimony of the witnesses as to what the "collection" entries represent. From its observation of the witnesses and in *30 view of the unexplained discrepancies, the Court is unwilling to accept their testimony as entirely frank and credible. Petitioner testified that upon audit of his returns for some prior years, the respondent did not complain of the lack of the underlying data and accepted similar summary records without question. Petitioner contends that an estoppel results from such conduct. It is true that in some cases where fraud was charged such evidence has been considered in determining intent. We have been referred to no case and are not aware of an authority holding that such evidence is sufficient to create an estoppel, even if pleaded. No estoppel has been pleaded and there is no issue of fraud in the instant case. It is to be noted that in the deficiency notice for the taxable year 1950, the respondent determined an understatement of gross receipts as disclosed by petitioner's records in the amount of $1,777.60. The only evidence bearing on this issue is petitioner's testimony to the effect that he has been unable to ascertain from his records any basis for such determinations. Such evidence is clearly insufficient to show error. In the light of this record we find no merit in the *31 petitioner's contention that the respondent's determination was unreasonable or arbitrary. Against objection by petitioner, respondent's counsel was allowed to interrogate the witness, Tunick, with respect to deficiencies determined against him as a partner in certain wagering transactions in question in the belief that such evidence might bear upon his credibility. In the light of the rebuttal testimony of Tunick setting forth the reasons motivating his conduct in that connection, the Court now states that it has disregarded such evidence in reaching its conclusion. Upon consideration of the entire record we conclude that petitioner has not established that the retained summary records accurately reflect the results of the wagering business in which he was engaged; nor has he carried the burden of showing that the disallowed losses were actually sustained in the respective taxable years involved. For failure of proof, the respondent's determinations of the deficiencies are sustained. Additions to the tax were imposed under sections 293(a) and 294(d) of the 1939 Code for each of the taxable years involved. Petitioner has offered no evidence with respect to such issues. The *32 Court having sustained the deficiencies, the additions to the tax are approved. Decisions will be entered for the respondent. Footnotes
1. One-half distributive share of Fogel-Tunick partnership. ↩
2. One-half distributive share of Fogel-Tunick partnership and one-third distributive share of B.F.T. partnership.↩
3. ↩
One-half loss claimed by Fogel-
Frederick partnership
$ 339.50
Disallowed loss claimed by peti-
tioner as sole proprietor
8,937.85
Gross receipts understated
1,777.60