B. B. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELLIOTT L. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT L. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF MONTFORT JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16847, 16901, 16902, 22289.   Promulgated February 18, 1930.

*Louis Loeffler, Esq.,* and *J. E. Thrift, Esq.,* for the petitioners.
*Phil M. Clark, Esq.,* and *L. A. Luce, Esq.,* for the respondent.

## OPINION.

LANSDON: In their respective petitions, Elliott L. Jones and Robert L. Jones plead that the statute of limitations has run against the deficiencies asserted against them. In his answer the respondent joins issue on the facts so pleaded by a specific denial which places the burden of proving them directly upon the pleaders. In these circumstances, there is no *prima facie* showing that the statute has run, as contended for by the petitioners; and, therefore, these proceedings are not within the rule laid down in *Farmers Feed Co.*, 10 B. T. A. 1069, and *H. G. Stevens*, 14 B. T. A. 1120, upon which petitioners rely. Since there is no evidence in the record as to the date of the filing of either of these returns, and the petitioners have introduced no proof otherwise to sustain their allegations as to the running of the statute against assessment, the decision on this issue must be for the respondent.

The single remaining issue, common to all the proceedings, is whether in the alleged sale of certain securities in the conditions

set forth in our findings of fact each of the petitioners sustained a loss deductible from his income in the taxable year. To establish their claims for deduction it is necessary for the petitioners to prove acquisition, ownership, cost, an actual sale and sales price of the property. In the instant proceeding the only evidence relating to the acquisition of the securities in question shows that they were purchased in 1917 at a total cost in the amount of $3,014,505, and that payment therefor was made by issuing the checks of the corporation. Without more evidence it would seem that in the first instance the corporation was the purchaser. There is nothing to show how the preliminary negotiations were conducted. We are unable to say that petitioners and the prior owners of the securities arrived at an understanding as to price or whether the deal was effected by the manager or some officer or other agent of the corporation. All we know is that some one or more persons must have agreed to buy the securities from the prior owners and, the minds of vendors and vendees having met, the transaction was effected by the issuance of the checks of the corporation. We conclude, therefore, that in the first transaction the corporation was the purchaser and thereby became the owner of the securities here involved.

Having reached the conclusion that the bonds were purchased and at least temporarily owned by the corporation, it is necessary to determine when and how, and at what cost the petitioners became the owners thereof, if at all. The record shows that after the corporation issued its checks the cost of the bonds so acquired was distributed to the petitioners by debits to their personal accounts on the books of the corporation ratably with their stockholdings. This procedure could have no effect on the issues here without proof of the actual transactions evidenced thereby. " Determination of net taxable income is the ascertainment of a fact and for this purpose books of account are no more than evidential and are neither indispensable nor conclusive." *In re Sheinman*, 14 Fed. (2d) 323, citing *Doyle* v. *Mitchell*, 247 U. S. 179, and many other cases to the same effect.

Counsel for the petitioners admits and the evidence shows that the book entries made at or about December 31 and January 1 of the years 1918–1919, 1919–1920, and 1920–1921, and purporting to pass title to the bonds to and fro between themselves and the corporation, were mere " wash " transactions for the purpose of avoiding Oklahoma ad valorem taxes and that it was never intended that title to the property should be affected thereby. The only evidence that the bonds were sold to the corporation in 1921 is in the shape of certain vouchers presumably original bookkeeping entries which purport to show the purchase of the bonds from the several petitioners at the market prices alleged to have prevailed on that

date. Just how these vouchers and entries are more potent to pass title than the three other sets of such documents and entries which admittedly had no such effect is a little difficult to understand. The first series of transactions is conceded to have been mere " wash " transfers for the purpose of avoiding state taxes. It does not follow, of course, that the final set of similar transfers in 1921 effected by mere bookkeeping entries was also a " wash " sale for the purpose of avoiding Federal income taxes but that situation and purpose are strongly indicated by the evidence.

Petitioners here rely on the doctrine of corporate entities and insist that each of them could deal as a stranger with the corporation. Even if this is true, bona fide actual sales and transfer of title, dominion and control must be shown. On these vital points the evidence is far from convincing. In this connection it is not improper to call attention to the fact that the hearing of this proceeding was at Tulsa, Okla., within a very short distance of the homes of the then living petitioners. Probably most of the doubtful points could have been resolved one way or the other by the testimony of any one of the petitioners, but none testified either orally or by deposition. The failure of the petitioners to testify in their own behalf raises the presumption that if called their evidence would not support their contentions. *Kirby* v. *Tallmadge*, 160 U. S. 379. On this rule, Lord Mansfield said:

It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted. *Blatch* v. *Archer*, Cowper 66, 98 Eng. Reprint 969.

The transactions here involved were between a close corporation and its only stockholders who were in absolute control of all its affairs and acts. In these circumstances it is apparent that none of the transfers can be regarded as transactions at arm's length between a willing seller and a willing buyer. The corporation had no voice in the matter. By mere book entries it was made to take the bonds in question into its property account at prices over which it had no control. It was entirely within the power of the petitioners to fix the price at which the ostensible sale of bonds was made just as it had been in previous years to transfer and retransfer at prices that best suited their purposes.

In discussing a somewhat similar situation in *M. I. Stewart & Co.*, 2 B. T. A. 737, we said:

* * * It can not be too much emphasized that alleged sales of property for the purpose of establishing losses must be real, valid transactions, definitely placing the legal and equitable ownership of the property alleged to have been sold out of the hands and out of the control of the seller. In the case of corporations sales to stockholders in all cases are subject to special scrutiny and

their good faith must be questioned. The principle of corporate entity can not be used to cloak a transaction which is essentially a fraud upon the public revenue.

In the light of the evidence, all of which at best is inconclusive, a decision of the issue herein adverse to the petitioners is indicated.

*Decision will be entered for the respondent.*