JAMES WILLIAM EVERHART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26675.   Promulgated June 8, 1932.

*Lincoln R. Clark, Esq.*, for the petitioner.
*W. R. Lansford, Esq.*, for the respondent.

OPINION.

McMAHON: This is a proceeding for the redetermination of an asserted deficiency in income tax for the year 1922 in the amount of $2,370.94.

The petitioner alleges that the respondent erred in taxing as income the amount of $162,078.77 as shown on Form 1099, information certificate, filed by H. F. Wilcox Oil & Gas Company for the calendar year 1922 instead of the amount of $153,580.48 reported by the petitioner in his income-tax return for the year 1922.

The petitioner is an individual residing at 920 Edgemere Court, in the City of Evanston, County of Cook, State of Illinois.

During the calendar year 1922, petitioner was engaged in the business of selling syndicate interests as a representative or financial agent of the Wilcox Oil & Gas Company. His father, William D. Everhart, and his brother, Thomas B. Everhart, now deceased, were associated with the petitioner.

The Wilcox & Gas Company organized various syndicates from time to time. It sold interests or participations in various drillings of test wells for the purpose of discovering oil or gas. It retained a half interest in these syndicates and sold undivided interests to various individuals to raise sufficient money to take care of the other half of the operation. The nature of the operation was the drilling of test wells in a number of different blocks of acreage varying in number from 10 to 25, in order that those participating might have the benefit of the law of averages. The blocks contained from 40 to 2,000 or 3,000 acres.

The petitioner, as representative of the Wilcox Oil & Gas Company, kept investors informed on developments of the company as a " go-between " between the company and its investors and from time to time as the syndicates were organized he represented the company in his territory on finances.

The petitioner received a commission of 33⅓ per cent on all sales of the interests in the syndicates.

Prior to 1922 there was in existence a firm called J. William Everhart & Company, which was dissolved in 1921. The financing was handled originally under the name of this company. Upon its dissolution in 1921, the petitioner took over all the stock as well as all the assets and assumed the liabilities of such company, and from that time on whatever agreements the company had were taken over by the petitioner and regarded as his personal business.

In the amount of $153,580.48 reported by him as income on his income-tax return, the petitioner included $1,501.71 representing commissions paid by Wilcox Oil & Gas Company to the J. William Everhart Company in 1922.

In 1922 the petitioner purchased from the Wilcox Oil & Gas Company an interest or participation in a syndicate for which he actually paid $20,000. The value of such interest or basis upon which the company sold such interest to other investors was $30,000. Although the petitioner treated this purchase as a personal transaction in so far as the company was concerned, he in fact purchased it on behalf of himself, his father and his brother, the basis of participation being 50 per cent, 25 per cent, and 25 per cent, respectively. This basis applied to everything in which the petitioner, his father and his brother were jointly interested.

The petitioner, in his records, treated the $20,000 as the net cost of a personal investment in behalf of himself, his father and his

brother, and regarded the $10,000 reduction of the selling price of $30,000 as a discount.

The Wilcox Oil & Gas Company filed an information certificate, Form 1099, and the statement attached to the deficiency letter dated February 18, 1927, contains the following relative thereto:

Information certificate, Form 1099, on file in this office discloses that you received salary, wages etc. amounting to $162,078.77 whereas you reported only $153,580.48 from this source. Adjustment of this item increases your net income by $8,498.29, which is subject to tax as follows:

The Wilcox Oil & Gas Company had its own method of handling its accounts, and from time to time sent the petitioner a memorandum covering his account with it.

The respondent, in the computation of the asserted deficiency, increased the net income of petitioner as shown in his income-tax report for 1922 by the amount of $8,498.29, being the difference between the amount of income reported by the petitioner and the amount reported by Wilcox Oil & Gas Company on Form 1099, information certificate. As heretofore stated, petitioner included as income in his income-tax return for the year 1922 the amount of $152,078.77 representing commissions from the Wilcox Oil & Gas Company, and the amount of $1,501.71 representing commissions paid by such company to J. William Everhart & Company, which company the petitioner had taken over in 1921, thus making a total income reported of $153,580.48. The Wilcox Oil & Gas Company filed an information certificate, Form 1099, and the difference between the amount of $162,078.77 reported thereon and the amount reported by the petitioner less the amount of $1,501.71 is $10,000.

The petitioner claims. that the amount of $10,000 represents a discount constituting a reduction of cost of an interest or participation in a syndicate purchased by him individually, but in fact purchased on behalf of himself, his father and his brother.

The respondent contends that such amount represents commissions or compensation for services rendered by the petitioner and, therefore, constitutes taxable income under section 213 (a) of the Revenue Act of 1921 and T. D. 3435.

Section 213 (a), *supra*, provides that the term "gross income" includes:

* * * gains, profits, and income derived from salaries, * * * for personal service * * * of whatever kind and in whatever form paid, * * * or gains or profits and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer * * *.

T. D. 3435, C. B. II–1, p. 50, provides that where property is sold by an employer to an employee for an amount substantially less than

its fair market value, such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value.

In *George W. Van Vorst, Executor*, 22 B. T. A. 632, wherein the question of the application of the rule laid down in Treasury Decision 3435 was involved, the Board in its opinion stated:

The rule laid down in article 31 of Regulations 65 [Treasury Decision 3435] apparently is intended to interpret either section 213 (a) or section 201 (a) of the Revenue Act of 1924, *but it is too broad for this purpose. In neither section is there any specific reference to such transactions as are covered by the provision of the article above referred to. By its terms it would cover situations which may easily be imagined in which the stockholder purchaser would clearly have received no taxable income from the purchase.* Under some circumstances a stockholder may be charged with the receipt of income from a transaction which has the form of a purchase (cf. *Continental Insurance Co. v. United States*, 259 U. S. 156), *but normally income does not result from a purchase even though a great bargain is obtained.* *Morgan J. McMichael*, 4 B. T. A. 266; *W. L. Dunn*, 14 B. T. A. 13; *Rose v. Trust Co. of Georgia*, 28 Fed. (2d) 767. * * * [Italics ours.]

The petitioner purchased an interest or participation and set up the investment on his own records as a personal investment of $20,000 in behalf of his father, his brother and himself. He testified that he did not raise any question about the propriety of the amount of $10,000 being treated as a commission on the memorandum sent to him by the company because he presumed he was only being charged for the amount he had paid for the interest.

We have no information as to whether or not the memorandum sent to the petitioner by the company, as well as the information certificate Form 1099, reflected the company's book entries. However, even if so, book entries are not conclusive and income is to be determined from actual facts. *B. B. Jones*, 18 B. T. A. 1225, and cases cited therein.

In *Luther Elkins*, 12 B. T. A. 1058, the petitioner, a member of a joint adventure in the development of certain oil wells, purchased 100 units, each unit representing an undivided 1/5000 interest in land. These units had been sold for $100 per unit to others, but the cost of selling was equal to 50 per cent of the selling price. The petitioner tendered his check for $5,000 in payment of the 100 units, but the bookkeeper advised him that it would be better to have the books show a purchase at $100 per unit and that the petitioner should offer his check for $10,000 and the bookkeeper would immediately return $5,000. This was done and reflected on the books as commission paid. The Board in that case held that such bookkeeping transaction did not give rise to income or change the true facts of the case.

We see nothing in *Taplin* v. *Commissioner*, 41 Fed. (2d) 454, cited by respondent, which leads to a different conclusion. On the contrary the court stated:

\* \* \* It is sufficient to say that whatever effect Treasury Decision 3435 might be given in other situations, it cannot here be construed to create income or dividends in a case where none otherwise existed when the facts are measured by the statute. *Income cannot be created by fiat alone.* [Italics ours.]

In our opinion the facts in this case do not warrant the application of T. D. 3435, and we therefore hold that the respondent erred in increasing the taxable net income of the petitioner for the year 1922 by the addition thereto of the amount of $8,498.29.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

TRAMMELL dissents.