COMMERCIAL INVESTMENT TRUST CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43495, 50051.   Promulgated May 23, 1933.

*Bernard Knollenberg, Esq.*, for the petitioner.
*Mason B. Leming, Esq.*, for the respondent.

148

OPINION.

ARUNDELL: The decided cases are uniform in holding that costs incurred in corporate organization, sales of capital stock, and amendments to corporate charters are not ordinary and necessary business expenses deductible in the year paid or incurred. *Emerson Electric Mfg. Co.*, 3 B.T.A. 932; *Simmons Co.*, 8 B.T.A. 631; affd., 33 Fed. (2d) 75; certiorari denied, 280 U.S. 577; *William Cluff Co.*, 7 B.T.A. 662; *Corning Glass Works*, 9 B.T.A. 771; 37 Fed. (2d) 798; certiorari denied, 281 U.S. 742; *Odorono Co.*, 26 B.T.A. 1355. Such items as are here sought to be deducted have consistently been treated as relating to capital and not to current operations. As said in *Corning Glass Works*, *supra*, the expense of selling preferred stock "represents a capital expenditure, and should be charged against the proceeds of the stock, and not recouped out of operating earnings."

The cases above cited likewise dispose of petitioner's alternative claim that the costs incident to the preferred stock issues be spread over 33⅓ years, during which period it was contemplated that the stock would be redeemed. An item that is not essentially an ordinary and necessary expense can not be placed in that category by spreading it rather than by taking it in full in the year paid or incurred. While costs of issuing stock are spoken of as capital expenditures, they may not result in the acquisition of a wasting capital asset as, for instance, a leasehold for a definite term. The fact that the stockholders hope to get their investment back within a certain period does not convert the cash paid in into an exhaustible asset. We accordingly hold that costs incurred in connection with the preferred stock issues may not be deducted under either the expense or exhaustion provisions of the statute.

This disposition of the claim for a deduction of the capital expenditures makes it unnecessary to pass upon the sufficiency of the proof

directed toward establishing the amount attributable to the first issue of preferred stock separately from the other expenditures in connection with the organization of petitioner and the issuance of its common stock. It appears that the entire amount of $30,065.09 paid or incurred in 1925 may properly be ascribed to the issuance of the 6½ percent preferred stock. For reasons above given, however, none of this amount may be deducted except the amount of $23.10 allowable as a tax.

At the hearing it was shown that $28,437.50 of the amount originally claimed as a deduction for expenses incurred in 1925 in the issuance of stock was for interest paid to Dillon, Read & Co. on $7,500,000 at 6½ percent per annum for the period of 21 days between the payment by Dillon, Read & Co. of the sale price of petitioner's 6½ percent preferred stock and the delivery of stock certificates. The amount is deductible in 1925 as interest paid within the year on indebtedness.

The item of $23.10 was incurred for revenue stamps incident to the issuance of preferred stock in 1925 and represents a tax, deductible from gross income of that year. *United States Playing Card Co.*, 15 B.T.A. 975; *Borg & Beck Co.*, 24 B.T.A. 995.

The petitioner has abandoned so much of the next issue as relates to the deductibility in 1926 of the difference between the sale price and market value of the stock held for delivery in 1928 and 1929.

The reasonableness of the remaining amount in controversy as compensation for services rendered to petitioner is not questioned. The arguments of the respondent on the question are directed to the deduction in 1926 of the excess of market value over the selling price of all the stock. The contentions made are that in 1926 employees did not have a vested right to receive the stock, and the petitioner was under no obligation to deliver it within the year. When applied to allotments B and C, as to which the claim has been withdrawn, the contentions have some force, but they are without merit as to allotment A.

The facts here are very much the same as in *Haskell & Barker Car Co.*, 9 B.T.A. 1087, where the taxpayer contracted to sell its capital stock to employees at less than the market value. It appears that in that case only a part of the stock was paid for and taken up by the employees during the taxable year, but it was held that the difference between selling price and market value of all the stock covered by the contracts was allowable as a salary deduction for the current year. If there is any distinction between the two cases, the one before us is the more favorable to the taxpayer. Here it appears that on June 1, 1926, when the written contracts were executed, the petitioner had been paid for the stock allotted to the

employees. This was accomplished by means of advances to the employees to pay the petitioner for the stock, the issuance of the stock to the employees, and its endorsement back as collateral security for the loans. The conditions precedent had been fulfilled within the year, that is, the allottees were employees on the designated dates in 1926, and the stock had been issued to them. The only contingency we see in the case is that in the event of failure to repay the loan to the company, the employees' stock might be forfeited and used to satisfy the loan. This was a condition subsequent and would not change the character of the stock as issued and paid for within the year nor affect the status of the employees as stockholders in the year. We accordingly hold that petitioner is entitled to the deduction claimed in connection with allotment A, as salaries accrued within the year.

There remains for determination the basis for the deduction. We have heretofore held that where stock is delivered as compensation for services rendered, the taxable income to the recipient is the fair market value of the stock at the time received. *Anthony Schneider*, 3 B.T.A. 920; *Fred J. Collins*, 16 B.T.A. 1426. The same basis is used in the computation of gain realized on the sale of stock received under such circumstances. *I. C. Bradbury*, 23 B.T.A. 1352. In *Haskell & Barker Car Co.*, *supra*, we allowed the deduction on the basis of the market value of the stock at the time the allotments were made.

Here most of the stock was allotted on January 2, 1926, when it had a fair market value of $71.50 per share. Other allotments were made on April 12, 1926, and July 1, 1926, when the fair market value was $55 and $62.50 per share, respectively. The employees acquired the right to one half of allotment A when the stock was allotted, and to the other half for continuous service to and including July 1, 1926. At those times the employees became owners of the stock and petitioner was under a definite obligation to turn over all of it on January 2, 1927, provided only that the employees had discharged their obligations for the loan. These facts, in our opinion, were sufficient to warrant the accrual of the deduction on petitioner's books. The deduction, measured by the difference between the fair market value of the stock and the selling price of $35 per share to the employees, for one half of allotment A earned by services performed prior to July 1, 1926, should be on the basis of a fair market value of $71.50 for the stock allotted on January 2, 1926, and $55 for the stock allotted on April 12, 1926. The allowance for the remaining half of the allotment and all of the shares allotted on July 1, 1926, should be on the basis of a fair market value of $62.50 per share.

The sum of $32,454, representing credits made in the accounts of the employees in 1926 for dividends declared on the stock allotted to them, is claimed to be deductible as additional compensation for services rendered. We have already held that petitioner may deduct the difference between the selling price and the fair market value of the stock included in allotment A, as compensation for services. The value of the stock on the date of allotment was based on the right to receive dividends thereon, and to permit the deduction of dividends as such and also the market value of the shares would be to allow a double deduction. The entire plan between petitioner and the employees contemplated their acceptance as stockholders from the date of allotment, with a right to receive dividends on the allotted stock, and with a charge for interest on the advances made the employees for the purchase of the stock. On the record we sustain the respondent's disallowance of the amount as a deduction.

Reviewed by the Board .

*Decision will be entered under Rule 50.*

———

STERNHAGEN, dissenting: As to the deduction allowed as compensation for services of the value of a corporation taxpayer's shares, I have already expressed my disagreement in *Haskell & Barker Car Co.*, 9 B.T.A. 1087. The confusion disclosed by the issue raised in the present proceeding as to the time and amount of the accrual, as suggested by my brother Murdock, has its genesis in the fallacy of regarding the disposition by a corporation of its own shares as an expense. The corporation has spent or incurred nothing. The transaction was a sale or issuance of shares to a restricted class for a price. The earnings and profits remain, throughout these stock transactions, entirely in the corporation's possession, subject to its use and disposition, and distributable, in its discretion, by way of dividends. What then serves to reduce its income? Nothing, unless the redistribution of share interests can be said to do so. If a partnership were to give an employee an interest in the business, there would probably be no suggestion of deduction. The concept of capital stock in *Eisner* v. *Macomber*, 252 U.S. 189, leads to the same result. Since, as the prevailing opinion holds, the payment of cash dividends to the employees fails to reduce income, it is difficult to see why the issuance of the stock upon which the dividends are paid should do so. It may be added, lest there be doubt as to the importance of this question, that the facts in *Rogers* v. *Guaranty Trust Co.*, 288 U.S. 123, give some idea of the possible extent of its effect. A close corporation could by this method earn profits year after year, and by distributing shares of an increasing value for services

avoid all tax while distributing its earnings, which to the distributee are free from normal tax. And it certainly adds nothing to the argument for deductibility that instead of an outright issuance for service, there is a sale for less than value.

MURDOCK agrees with this dissent.

---

MURDOCK, dissenting: I see neither statutory nor factual authority for the deductions allowed in this case on account of the "A" allotment of stock. The prevailing opinion attempts to justify the accrual of definite amounts on the theory that certain employees on January 2 and on April 12, 1926, purchased certain stock. An accrual must be made as of the time when the facts determinative of the obligation and its amount become fixed. How could this corporation accrue any amount until there was an agreement, which not only bound it to deliver a definite number of shares to a certain employee, but bound some employee to accept and pay for those shares? The findings do not show any such agreement prior to June 1, 1926. Therefore, accruals based on fair market value of stock on January 2 and April 12 are clearly improper. But aside from this, the deduction is wrong in principle. See the dissenting opinions in *Haskell & Barker Car Co.*, 9 B.T.A. 1087. Other stockholders of the parent are the only ones adversely affected by the issuance of additional stock for less than its fair market value. Thereafter they have to be content with a smaller share of corporate distributions. But the income of the issuing corporation certainly is not reduced. Its assets are not reduced. The transaction is unique and is not covered by any provision of the statute allowing deductions to a corporation.

STERNHAGEN, McMAHON, and GOODRICH agree with this dissent.